1   Jason S. Angell, Bar No. 221607
    jangell@hopkinscarley.com
2   Christopher A. Hohn, Bar No. 271759
    chohn@hopkinscarley.com
3   **HOPKINS & CARLEY**
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA  95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:     (408) 286-9800
8   Facsimile:      (408) 998-4790

9   Attorneys for Applicants
    BROADCOM CORPORATION and AVAGO
10  TECHNOLOGIES INTERNATIONAL SALES
    PTE. LIMITED

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14  In re Ex Parte Application of          MISC. ACTION NO.
    BROADCOM CORPORATION, a
15  Delaware corporation, and AVAGO        **BROADCOM'S AND AVAGO'S *EX PARTE***
    TECHNOLOGIES INTERNATIONAL             **APPLICATION FOR AN ORDER**
16  SALES PTE. LIMITED, a business entity  **PURSUANT TO 28 U.S.C. § 1782**
    formed under the laws of Singapore     **GRANTING LEAVE TO OBTAIN**
17                                         **DISCOVERY FOR USE IN FOREIGN**
          Applicants,                      **PROCEEDINGS; SUPPORTING**
18                                         **MEMORANDUM**
    for an Order Pursuant to 28 U.S.C. Section
19  1782 Granting Leave to Obtain Discovery
    for Use in Foreign Proceeding,
20

21

22

23

24

25

26

27

28

692\3257988.3

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1     Applicants Broadcom Corporation ("Broadcom") and Avago Technologies International

2   Sales Pte. Limited ("Avago") (collectively "Applicants") apply to the Court *ex parte* for an order

3   pursuant to 28 U.S.C. § 1782 granting Applicants leave to obtain targeted discovery from Nvidia

4   Corporation ("Nvidia") for use in certain foreign proceedings.  This application is brought on an

5   *ex parte* basis pursuant to Civil L.R. 7-10.  This Court has expressly authorized, and routinely

6   accepts, *ex parte* applications for 28 U.S.C. § 1782 discovery.  *See, e.g., Matter of Action & Prot.*

7   *Found.*, No. 14-CV-80076 MISC EMC (LB), 2015 WL 1906984, at *6 (N.D. Cal. Apr. 27, 2015)

8   ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782");

9   *IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) ("It is common

10   for parties to file *ex parte* [Section 1782] applications, as parties will be given adequate notice of

11   any discovery taken pursuant to the request and will then have the opportunity to move to quash

12   the discovery or to participate in it.") (internal quotations omitted).[1]  This application is supported

13   by the memorandum of points and authorities below and the Declaration of Wolrad Prinz zu

14   Waldeck und Pyrmont filed concurrently herewith ("Prinz zu Waldeck Decl.").  The proposed

15   order, the document subpoena, and the deposition subpoena proposed to be served on Nvidia are

16   attached to this application as Exhibits 1, 2, and 3, respectively.

17

18

19

20

21

22   [1] *See also In re Ambercroft Trading Ltd.*, No. 18-MC-80074-KAW, 2018 WL 2867744, at *3
(N.D. Cal. June 11, 2018) ("Section 1782 petitions ... have regularly [been] reviewed on an *ex*
23   *parte* basis" (quotation omitted)); *In re Roebers*, No. C12-80145 MISC RS (LB), 2012 WL
2862122, at *2 (N.D. Cal. July 11, 2012) ("An *ex parte* application is an acceptable method for
24   seeking discovery pursuant to § 1782."); *In re Apple Inc.*, No. MISC 12-80013 JW, 2012 WL
1570043, at *1 (N.D. Cal. May 2, 2012) ("Under 28 U.S.C. § 1782, a district court may order a
25   person residing or found within its district to produce documents or testimony for use in a foreign
legal proceeding, unless the disclosure would violate a legal privilege."); *In re Republic of*
26   *Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15,
2010) ("...it is common for the process of presenting the request to a court and to obtain the order
27   authorizing discovery to be conducted *ex parte*.  Such *ex parte* applications are typically justified
by the fact that the parties will be given adequate notice of any discovery taken pursuant to the
28   request and will then have the opportunity to move to quash the discovery or to participate in it.")
(internal quotations and citations omitted).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................ 2

    A.   The Parties And The German Proceedings ...................................................... 2

    B.   The RIVA TNT And The "Product Overview" ............................................... 4

    C.   The Non-Infringement Arguments Regarding The Nintendo Switch ............... 5

    D.   Applicants' Proposed Discovery ..................................................................... 5

I.   Legal argument ............................................................................................................ 6

    A.   Legal Standard ................................................................................................ 6

    B.   The Application Meets The Statutory Requirements In Section 1782 ........................ 7

    C.   The Supreme Court's *Intel* Factors Strongly Favor Granting The Application ............. 8

        1.   First *Intel* Factor: Nvidia Is A "Participant" In The Foreign Proceeding But German Courts Have Limited Ability To Order Discovery ..................................... 8

        2.   Second *Intel* Factor: Applicants Seek Highly Relevant Information That Will Assist The German Courts ............................................................................... 9

        3.   Third *Intel* Factor: No Foreign Discovery Restrictions Bar Applicants' Requested Discovery ........................................................................................... 12

        4.   Fourth *Intel* Factor: Applicants' Discovery Is Narrowly Tailored To Avoid Undue Burden ................................................................................................ 13

II.  CONCLUSION ............................................................................................................. 14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3

-i-

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# TABLE OF AUTHORITIES

## CASES

*Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 32/18 (filed on March 14, 2018) ............................................................................................ 7

*Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 35/18 (filed on March 16, 2018) ............................................................................................ 7

*Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 83/18 (filed on June 13, 2018) ............................................................................................. 8

*Broadcom Corp. v. Nintendo of Europe GmbH*, No 7 O 62/18 (filed on May 25, 2018) ............................................................................................... 8

*Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348 ................ 12

*Cryolife, Inc.*, 2009 WL 88348 ....................................................................................... 18

*Heraeus Kulzer*, 633 F.3d at 597-99 .............................................................................. 18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)................. 14

*In re Apple Inc.*, 2012 WL 1570043 .................................................................. 12, 16, 17

*In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ............................................................... 17

*In re Eurasian Nat'l Res. Corp., LTD.*, No 18-MC-80041-LB, 2018 WL 1557167 ..................... 17

*In re Gianasso*, No. C 12-80029 MISC SI, 2012 WL 651647 ...................................... 12

*In re Google Inc.*, No. 14-MC-80333-DMR, 2014 WL 7146994.......................... 15, 17

*In re LG Elect. Deutschland GmbH*, No. 12-CV-1197-LAB (MDD), 2012 WL 1836283 ........... 11

*In re Minatec Fin. S.A.R.L.*, 2008 WL 3884374 ................................................ 13, 16, 18

*In re Ontario Principals' Council*, No. 5:13-MC-80237-LHK-PSG, 2013 WL 607351 .............. 15

*In re Republic of Ecuador*, 2010 WL 3702427.................................................. 11, 12, 15

*In re Roebers*, 2012 WL 2862122.................................................................................... 13

*In re Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568 ..................... 13, 16

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) .................. 11, 12, 17

*IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)...................... 5

*Metallgesellschaft v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) ..................................... 18

*Nintendo of Europe GmbH v. Avago Techs. Int'l Sales Pte. Ltd*, No 6 Ni 35/18 ............ 8

*Nintendo of Europe GmbH v. Avago Techs. Int'l Sales Pte. Ltd.*, No 4 Ni 20/19 ............ 8

*Nvidia Ltd v. Avago Techs. Int'l Sales Pte. Ltd*, No 7 Ni 39/19 (EP) ............................ 9

*Nvidia Ltd v. Broadcom Corp*, No 7 Ni 28/19 (EP)....................................................... 8

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004)............ 11

*Siemens AG v. Western Digital Corp.*, No. 8:13-CV-01407-CAS (AJWx), 2013 WL 5947973 .. 14

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

692\3257988.3

-ii-

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

## I.     INTRODUCTION

Pursuant to 28 U.S.C. § 1782, Applicants seek leave to serve Nvidia with narrowly tailored discovery that is directly relevant to the theories that Nvidia and it customer, Nintendo of Europe GmbH ("Nintendo"), have asserted in patent litigation with Applicants now pending in Germany. *First*, Nvidia and Nintendo have claimed in the German proceedings that a semiconductor chip that Nvidia manufactured and sold decades ago (the "RIVA TNT"), invalidates one of the patents asserted against Nintendo.  Unfortunately, Nvidia has produced in the German litigation only a two page, high-level marketing document to support its invalidity contentions, rather than producing the type of detailed technical documentation about the RIVA TNT chip that it would be expected to produce in infringement litigation in the United States. The information Nvidia has withheld, and that Applicants seek through this application, will help explain in detail how the RIVA TNT chip works, and whether it operates in ways that are relevant to the validity of one of the patents at issue in the German proceedings.

*Second*, Nintendo, with support from Nvidia, has also claimed that the accused Nintendo product does not infringe other asserted patents because various features of a different chip—the T210 System-on-a-Chip (also known as the "NVIDIA Tegra X1")—which was supplied by Nvidia and incorporated into the accused product, were purportedly disabled.  However, neither Nvidia, nor Nintendo, have produced any documents showing that the features were disabled in the NVIDIA Tegra X1 chips supplied to Nintendo and used in the allegedly infringing products.

Through this application, Applicants seek narrowly-tailored discovery on the RIVA TNT chip so that they may fully assess and challenge Nvidia's claim that the chip invalidates one of the asserted patents.  The Applicants also seek limited discovery on the extent to which the NVIDIA Tegra X1, or the accompanying software supplied to Nintendo, was customized to disable specific features that were otherwise available so that Applicants can more fully assess and challenge Nintendo's non-infringement theories.

This discovery, which is directly relevant to the German proceedings, is in the possession of Nvidia in the United States and cannot be obtained in the German proceedings.  Section 1782 authorizes the targeted discovery that Applicants seek, as confirmed by numerous decisions by

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1    this District and other courts.  For all these reasons, and those discussed below, Applicants
2    respectfully request that the Court grant them leave to issue the subpoenas attached as Exhibits 2
3    and 3.

4    **II.     STATEMENT OF FACTS**

5         **A.     The Parties And The German Proceedings**

6         Broadcom, headquartered in San Jose, California, is a global business that designs,
7    develops, manufactures, and supplies a broad range of semiconductor products.  Avago is a
8    company within the same corporate family as Broadcom.  Prinz zu Waldeck Decl., ¶ 7.  Over the
9    years, Broadcom and its related entities have obtained numerous patents for the novel
10   semiconductor technologies and other inventions that they have developed.

11        Nintendo of Europe GmbH, headquartered in Frankfurt, Germany, is the European
12   division of Nintendo Co., Ltd., a multinational video game and consumer electronics company.
13   Prinz zu Waldeck Decl., ¶ 8.  In 2018, Broadcom and Avago brought the following four patent
14   infringement actions (collectively, the "German Infringement Actions") against Nintendo in the
15   Mannheim Regional Court in Germany.[2]  In each of these actions, Applicants allege that
16   Nintendo has infringed Applicants' patent rights through its use of the NVIDIA Tegra X1 chip in
17   the Nintendo Switch video game console ("Nintendo Switch"):

18        • *Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 32/18
19          (filed on March 14, 2018): This action alleged infringement of European Patent
20          No. EP 1,365,385 ("EP '385 Patent").  In broad terms, the EP '385 Patent
21          describes and claims a graphics display system for processing and displaying video
22          graphics.

23        • *Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 35/18
24          (filed on March 16, 2018): This action alleges infringement of European Patent

25   _____

26   [2] In contrast to patent infringement proceedings in United States district courts, Germany has a
     bifurcated patent litigation system in which separate courts handle questions of patent
27   infringement and patent validity.  The German Regional Courts ("Landgericht," in German) hear
     patent infringement actions, each of which address only one patent.  The German Federal
28   Patent Court ("Bundespatentgericht," in German) hears "nullity" actions.  Nullity actions are
     proceedings brought by a party to challenge the validity of a patent.  Prinz zu Waldeck Decl., ¶ 9.

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1    No. EP 1,260,910 ("EP '910 Patent"). The EP '910 Patent generally describes and

2    claims an integrated circuit in a network device with various features.

3    • *Broadcom Corp. v. Nintendo of Europe GmbH*, No 7 O 62/18 (filed on May 25,

4    2018): This action (the "EP '531 Infringement Action") alleges infringement of

5    European Patent No. 1,177,531 ("EP '531 Patent"). Generally, the EP '531 Patent

6    describes and claims a computer graphics system and method for processing

7    textures for a graphic image on a computer display.

8    • *Avago Techs. Int'l Sales Pte. Ltd. v. Nintendo of Europe GmbH*, No 2 O 83/18

9    (filed on June 13, 2018): This action alleges infringement of European Patent No.

10   1,385,339 ("EP '339 Patent"). In broad terms, the EP '339 Patent claims a system,

11   with various components, for providing layered graphics in a video environment.

12   Prinz zu Waldeck Decl., ¶¶ 11-13.[3]

13   In response to the German Infringement Actions, Nintendo and Nvidia, Nintendo's

14   supplier, brought four "nullity" actions against Applicants in the German Federal Patent Court in

15   Munich, Germany (collectively the "German Nullity Actions"), seeking to invalidate the German

16   parts of the Asserted Patents:

17   • *Nintendo of Europe GmbH v. Avago Techs. Int'l Sales Pte. Ltd.*, No 4 Ni 20/19

18   (EP) joined with 4 Ni 27/19 (EP) (filed on July 9, 2018): This action, brought by

19   Nintendo, seeks to invalidate claims of the EP '385 Patent. Nvidia joined this

20   action as a second plaintiff on February 6, 2019.

21   • *Nintendo of Europe GmbH v. Avago Techs. Int'l Sales Pte. Ltd,* No 6 Ni 35/18

22   (filed on July 6, 2018): This action, brought by Nintendo, seeks to invalidate

23   claims of the EP '910 Patent. Nvidia joined this action as a second plaintiff on

24   February 6, 2019.

25   • *Nvidia Ltd v. Broadcom Corp,* No 7 Ni 28/19 (EP) joined with No 7 Ni 35/19 (EP)

26   (filed on Aug. 6, 2018): This action (the "EP '531 Nullity Action"), brought by

27

28   _____

[3] The EP '385 Patent, EP '910 Patent, EP '531 Patent, and EP '339 Patent are referred to collectively herein as the "Asserted Patents."

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Nvidia, seeks to invalidate claims of the EP '531 Patent.

- *Nvidia Ltd v. Avago Techs. Int'l Sales Pte. Ltd,* No 7 Ni 39/19 (EP) (filed on Oct. 18, 2018): This action, brought by Nvidia, seeks to invalidate claims of the EP '339 Patent.

Prinz zu Waldeck Decl., ¶ 14. The German Infringement Actions and the German Nullity Actions are referred to collectively herein as the "German Proceedings."

**B.     The RIVA TNT And The "Product Overview"**

With co-pending nullity proceeding underway, Nintendo then sought to stay the German Infringement Actions, arguing that the Asserted Patents are likely to be invalidated in the German Nullity Actions. Prinz zu Waldeck Decl., ¶ 15. With regard to the EP '531 Patent, Nvidia claims that the patent is invalid in light of Nvidia's RIVA TNT chip, which it contends is a previously existing prior art device. This theory was previously raised by Volkswagen AG and Audi AG in the now-settled infringement proceedings that Broadcom brought against these two entities in the Mannheim Regional Court.[4] Harman Becker Automotive Systems GmbH and Nvidia Singapore Ltd., suppliers to these two entities, also intervened in these proceedings. Prinz zu Waldeck Decl., ¶ 16.[5]

Nvidia and Nintendo base their invalidity arguments on a two-page "Product Overview" document (the "Product Overview") regarding the RIVA TNT chip. Prinz zu Waldeck Decl., ¶ 16, Exh. F. The Product Overview is not a typical "technical" document that details the manner in which the RIVA TNT chip operates. Rather, it is marketing document that, due to its brevity,

---

[4] *See Broadcom Corp. v. Volkswagen AG,* 7 O 191/17; *Broadcom Corp. v. Audi AG,* 7 O 190/17.
[5] The Riva TNT chip was also at issue in patent infringement litigation filed by 3DFX Interactive Inc. in the 1998-1999 time frame. *See 3DFX Interactive Inc. v. Nvidia Corp.,* United States District Court for the Northern District of California, Case No. 3:98-cv-03627-MHP and *3DFX Interactive Inc v. Nvidia Corp.,* United States District Court for the Northern District of California, Case No. 3:99-cv-02460-MHP ("the 3DFX Cases"). Applicants understand that Nvidia produced or otherwise made available to the plaintiff in the ordinary course of the 3DFX Cases a volume of materials describing the structure, function, and operation of the Riva TNT product. Moreover, 3DFX and Nvidia filed cross motions for summary judgment of infringement and non-infringement, respectively, in those actions. The 3DFX Cases settled in early 2001, before the summary judgment motions were resolved. Applicants seek materials related to the Riva TNT products from the 3DFX Cases, either because the case filings remain under seal (summary judgment-related filings), or are otherwise not publicly available (discovery materials produced by Nvidia).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3                                    - 4 -
EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1  provides no more than a high-level "overview" of some of the RIVA TNT chip's alleged features.

2  *See* Prinz zu Waldeck Decl., Exh. F.  Nvidia and Nintendo argue that the Product Overview—

3  which purports to have been copyrighted in 1998—provides a sufficient disclosure to invalidate

4  the asserted claims in the EP '531 Patent.  *See* Prinz zu Waldeck Decl., ¶ 16.

5      Beyond the Product Overview, neither Nvidia, nor Nintendo provided to the German

6  courts or Applicants with any technical documentation or other materials regarding the RIVA

7  TNT chip to show, for instance, how the RIVA TNT chip functions, or what aspects of that

8  functionality were made public prior to the relevant time.  Prinz zu Waldeck Decl., ¶ 16.

9      Based largely on the Product Overview, the Mannheim Regional Court stayed the EP '531

10  Infringement Action on March 29, 2019 pending a final decision in the EP '531 Nullity Action.

11  Prinz zu Waldeck Decl., ¶ 16.

12      **C.    The Non-Infringement Arguments Regarding The Nintendo Switch**

13      As for the other three infringement actions, Nintendo has argued that the Nintendo Switch

14  does not infringe any of the EP '385, EP '910, and EP '339 Patents because features required by

15  the patent claims (i) have allegedly been disabled by Nintendo software; and (ii) are purportedly

16  not supported by various drivers and software.  The Mannheim Regional Court has not yet issued

17  a decision in these other three infringement proceedings.  Prinz zu Waldeck Decl., ¶ 17.

18      **D.    Applicants' Proposed Discovery**

19      Applicants seek leave to serve Nvidia with subpoenas (attached to this application as

20  Exhibits 2 and 3) for documents and deposition testimony.  Applicants' proposed discovery

21  targets narrow categories of documents, materials, and information that will help establish how

22  the RIVA TNT chip functions, what Nvidia publicly disclosed about it, and whether the chip

23  includes the features the German courts have identified as potentially invalidating claims in the

24  EP '531 Patent.  *See* Exh. 2 (Request for Production Nos. 1-18); Exh. 3 (Topic Nos. 1-6).  Nvidia

25  has not produced the requested documents, materials, and information over the course of the

26  German Proceedings.  *See* Prinz zu Waldeck Decl., ¶ 16.

27      Applicants' proposed discovery also seeks limited information that will assist in the

28  German Infringement Actions.  The information sought through the subpoenas will help establish:

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1   (i) the capabilities of the NVIDIA Tegra X1 and its associated software; and (2) the extent to

2   which the chip and the associated software were customized, disabling specific features that are

3   generally available for other customers. *See* Exh. 2 (Request for Production Nos. 19-23); Exh. 3

4   (Topic Nos. 1, 6-14).

5       The German Proceedings do not provide discovery processes, such as those available in

6   American courts, that would allow Applicants to obtain the documents, materials, and testimony

7   from Nvidia that Applicants seek through this application. Prinz zu Waldeck Decl., ¶¶ 19-20. As

8   federal courts in this district and elsewhere have recognized, German law allows Applicants to

9   use in the German Proceedings information they obtain through, for example, the procedures

10  authorized by 28 U.S.C. § 1782. Prinz zu Waldeck Decl., ¶¶ 21-24.

11  **I.    LEGAL ARGUMENT**

12      **A.    Legal Standard**

13      "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to

14  provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*

15  *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Over time, Congress has "substantially

16  broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at

17  247-49. The "twin aims" of Section 1782 are "providing efficient means of assistance to

18  participants in international litigation in our federal courts and encouraging foreign countries by

19  example to provide similar means of assistance to our courts." *In re Republic of Ecuador*, 2010

20  WL 3702427, at *1 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d

21  Cir. 2004)); *see also In re LG Elect. Deutschland GmbH*, No. 12-CV-1197-LAB (MDD), 2012

22  WL 1836283, at *3 (S.D. Cal. May 21, 2012) (authorizing the requested subpoena under Section

23  1782 because "our courts favor broad discovery generally."). Section 1782 provides in part:

24          The district court of the district in which a person resides or is
            found may order him to give his testimony or statement or to
25          produce a document or other thing for use in a proceeding in a
            foreign or international tribunal. ... The order may be made ... upon
26          the application of any interested person and may direct that the
            testimony or statement be given, or the document or other thing be
27          produced, before a person appointed by the court.

28  28 U.S.C. § 1782(a). The statute therefore authorizes a district court to grant a Section 1782

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

application where: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Apple Inc.,* 2012 WL 1570043, at *1; *see also In re Gianasso,* No. C 12-80029 MISC SI, 2012 WL 651647, at *2 (N.D. Cal. Feb. 28, 2012) (same); *In re Republic of Ecuador,* 2010 WL 3702427, at *2 (same).

The Supreme Court in *Intel v. Advanced Micro Devices* articulated four non-exhaustive factors to help district courts determine how to exercise their discretion in granting Section 1782 applications, including:

1. whether the "person from whom discovery is sought is a participant in the foreign proceeding";

2. "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

3. whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

4. whether the discovery is "unduly intrusive or burdensome."

*Intel,* 542 U.S. at 264-65; *see also In re Apple Inc.,* 2012 WL 1570043, at *1 (identifying same factors); *Cryolife, Inc. v. Tenaxis Med., Inc.,* No. C08-05124 HRL, 2009 WL 88348, at *1-2 (N.D. Cal. Jan. 13, 2009) (same).

As explained below, Applicants have satisfied the statutory requirements set forth in Section 1782. The discretionary factors articulated in *Intel* also weigh in favor of granting the application.

### B.    The Application Meets The Statutory Requirements In Section 1782

Applicants' request for discovery meets all three statutory requirements. *First,* Nvidia maintains its corporate headquarters and principal place of business at 2788 San Tomas Expressway in Santa Clara, California. Prinz zu Waldeck Decl., ¶ 9, Exh. A. Nvidia therefore

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

"resides" and "is found" in this District. *See, e.g., Cryolife*, 2009 WL 88348, *2 (holding that the "resides or is found" requirement is satisfied where it was undisputed that the target of discovery had its principal place of business in N.D. Cal.).

*Second*, Applicants seek the requested discovery for use in a "proceeding before a foreign or international tribunal." 28 U.S.C. § 1782(a). Many decisions of this Court and others have already expressly found that German courts qualify as "tribunals" for the purposes of Section 1782. *See, e.g., In re Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) (permitting discovery for use in patent infringement suit pending in Mannheim District Court); *Cryolife, Inc.*, 2009 WL 88348, at *2 (permitting discovery for use in patent infringement suit pending in German court); *In re Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-CV-269 LEK/RFT, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (permitting discovery for use in litigation pending in court in Germany).

*Third*, as patent infringement plaintiffs and the owners of the patents at issue in the German Nullity Proceedings, Broadcom and Avago qualify as "interested" parties. 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 256 ("No doubt litigants are included among ... the 'interested person[s]' who may invoke § 1782"); *In re Roebers*, 2012 WL 2862122, at *3 ("there is no question that Ms. Roeber is an 'interested person' as she is a litigant in the proceeding").

Accordingly, Applicants have satisfied the statutory requirements for an application under 28 U.S.C. § 1782.

**C.    The Supreme Court's *Intel* Factors Strongly Favor Granting The Application**

The discretionary factors identified by the Supreme Court in *Intel* also weigh heavily in favor of granting Applicants' request for discovery.

**1.    First *Intel* Factor: Nvidia Is A "Participant" In The Foreign Proceeding But German Courts Have Limited Ability To Order Discovery**

For the first *Intel* factor, the Court asks whether "the person from whom discovery is sought is a participant in the foreign proceeding." 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid"). This factor

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3                              - 8 -
EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1  arose out of the Supreme Court's concern that a party to foreign litigation would use Section 1782

2  to obtain discovery in the U.S. that it could just as easily have obtained from the foreign tribunal.

3  *See id.* (finding that "the need for § 1782(a) generally is not as apparent" when the party from

4  whom discovery is sought is a party to the foreign proceeding because "[a] foreign tribunal ... can

5  itself order them to produce evidence.").  However, courts have routinely granted Section 1782

6  applications for discovery from parties to actions in Germany, finding the first *Intel* factor to be

7  neutral, as German courts do not allow the same degree of early discovery as is allowed in the

8  United States. *See, e.g., Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir.

9  2011) (authorizing Section 1782 discovery because German litigant could not "obtain even

10  remotely comparable discovery by utilizing German procedures"); *Cryolife, Inc.,* 2009 WL

11  88348, at *2-3 (finding that the first *Intel* factor is neutral with respect to litigation in German

12  courts); *Siemens AG v. Western Digital Corp.,* No. 8:13-CV-01407-CAS (AJWx), 2013 WL

13  5947973, at *2 (C.D. Cal. Nov. 4, 2013) (same).

14      Nvidia is not a party to the EP '531 Infringement Action, for which Nintendo obtained a

15  stay pending the outcome of the EP '531 Nullity Action.  While Nvidia is a party to the German

16  Nullity Actions, including the EP '531 Nullity Action, the German courts do not allow early

17  discovery regarding the RIVA TNT chip, or the Product Overview on which Nvidia and Nintendo

18  rely for their invalidity arguments.  The German courts also do not allow early discovery into, in

19  respect of the German Infringement Actions, the extent to which certain relevant features may be

20  disabled (as Nvidia and Nintendo claim they are) in the NVIDIA Tegra X1 chips supplied to

21  Nintendo, despite the undeniable importance of this evidence to the German Proceedings. *See*

22  Prinz zu Waldeck Decl., ¶¶ 19-20. This factor is therefore neutral. *See, e.g., Cryolife, Inc.,* 2009

23  WL 88348, at *2-3 (finding that the first *Intel* factor is neutral with respect to litigation in German

24  courts).

25      2.    **Second *Intel* Factor: Applicants Seek Highly Relevant Information That Will Assist The German Courts**

26

27      In *Intel,* the Supreme Court advised the courts to "take into account the nature of the

28  foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
692\3257988.3    - 9 -
EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1  foreign government or the court or agency abroad to U.S. federal-court judicial assistance." 542

2  U.S. at 264. In the German Proceedings concerning the EP '531 Patent, nullity plaintiff Nvidia

3  and infringement defendant Nintendo contend that the RIVA TNT chip as described in the

4  Product Overview anticipate the asserted patent claims, thereby invalidating them. The

5  subpoenas that are the subject of this Application seek certain limited discovery relating to the

6  RIVA TNT chip, how it functions, and whether it qualifies as anticipating prior art.

7      In the infringement actions in which the EP '385 Patent, the EP '910 Patent, and the EP

8  '339 Patent are asserted, Nintendo has argued that the Nintendo Switch cannot infringe these

9  patents because various functions associated with the NVIDIA Tegra X1 chip have been disabled

10  and are not implemented by the associated software. Accordingly, Applicants seeks to serve

11  Nvidia with narrowly tailored discovery regarding the capabilities of the NVIDIA Tegra X1 and

12  the accompanying software supplied to Nintendo, and the extent to which they were customized

13  to disable specific features that are generally available.

14      In sum, the discovery Applicants seek is directly relevant to Nintendo's and Nvidia's

15  invalidity and non-infringement arguments, and will allow Applicants to better investigate and

16  defend against those arguments. Absent the requested discovery, Applicants may be denied

17  access to important technical evidence about the allegedly invalidating product and the accused

18  device, which is necessary to respond to Nintendo and Nvidia's claims. *See In re Ontario*

19  *Principals' Council,* No. 5:13-MC-80237-LHK-PSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov.

20  8, 2013) (granting application under § 1782 where the discovery requested was narrowly tailored

21  and "of obvious aid to the foreign tribunal"); *In re Republic of Ecuador,* 2010 WL 3702427, at *5

22  (granting application where applicant "has made a prima facie showing that the information it

23  seeks" has "some relevance" to the foreign proceeding); *see also In re Google Inc.,* No. 14-MC-

24  80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) (granting application under

25  § 1782 for all requested discovery where the relevancy of a particular request was unclear but the

26  applicant "at least plausibly alleged that the information sought…is relevant to the international

27  proceedings and is not unduly burdensome").

28      The accompanying Declaration of Mr. Prinz zu Waldeck, a German lawyer with extensive

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

experience in patent law and thorough knowledge of the German Proceedings, shows that the German courts will likely be receptive to the evidence sought by this Application. *See Prinz zu Waldeck Decl.,* ¶¶ 21-24. This is more than sufficient to justify Section 1782 discovery under the circumstances. The Northern District has explained that, absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to err on the side of permitting discovery." *In re Varian Med. Sys.,* 2016 WL 1161568 at *4 (internal quotations and citations omitted) (concluding that this fact weighed in favor of discovery because there was "no evidence or case law suggesting that the Mannheim District Court would be unreceptive to the discovery Varian seeks."). Indeed, former Chief Judge Ware of this District recognized that the receptivity of the German courts "compelled" allowing discovery for use in German patent litigation, as sought here by Applicants:

> Upon review, the Court finds that Nokia has not met its burden of demonstrating that the German courts would be unreceptive to U.S. judicial assistance or that Apple's request is an attempt to circumvent German proof-gathering restrictions .... Nokia presents no evidence to suggest that the German courts would disallow such evidence, once Apple has obtained it. Rather, Nokia contends only that German rules of procedure do not provide a mechanism for a party to obtain such evidence. However, in recognizing that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or tradition" the Supreme Court anticipated situations such as these, and nonetheless found that the objectives of § 1782 compelled discovery.

*In re Apple Inc.,* 2012 WL 1570043, at *2.[6] Many other cases also recognize the receptiveness of German courts to the use of discovery obtained through Section 1782. *See, e.g., Heraeus Kulzer,* 633 F.3d at 596 ("And there is no indication that the German court...would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering"); *Cryolife, Inc.,* 2009 WL 88348, at *3 (concluding that the second *Intel* factor weighed in favor of discovery where there was "no basis to conclude that the German court would be unreceptive to the information requested by [the

---

[6] Judge Ware's analysis similarly shows that another *Intel* discretionary factor—whether the discovery is an attempt to circumvent foreign discovery rules—also weighs in favor of granting Qualcomm's *ex parte* application.

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1  applicant].”); *In re Minatec Fin. S.A.R.L.*, 2008 WL 3884374, at *7 (“[W]e find neither any

2  rejection nor offense taken by the German tribunals to a stateside discovery order...”).

3      The second *Intel* factor therefore strongly favors allowing the Section 1782 discovery that

4  Applicants now seek.

5      **3.    Third *Intel* Factor: No Foreign Discovery Restrictions Bar Applicants'**

6          **Requested Discovery**

7      Section 1782 does not require that the documents and testimony sought be discoverable in

8  the foreign courts. *Intel*, 542 U.S. at 260-63.  However, a district court may consider whether an

9  applicant is seeking in bad faith “to circumvent foreign proof-gathering restrictions or other

10  policies of a foreign country or the United States.” *Id.* at 265; *see also In re Esses*, 101 F.3d 873,

11  876 (2d Cir. 1996) (“[O]nly upon authoritative proof that a foreign tribunal would *reject* evidence

12  obtained with the aid of Section 1782 should a district court refrain from granting the assistance

13  offered by the act.”) (internal quotations omitted; emphasis in original).  That is not the case here.

14  To the contrary, as explained above, the Declaration of Mr. Prinz zu Waldeck establishes that the

15  German courts will likely be receptive to the evidence obtained through the requested discovery.

16  *See* Prinz zu Waldeck, ¶¶ 21-24.

17      Courts “‘err on the side of permitting discovery’” absent information that the foreign

18  tribunal “would reject information obtained through Section 1782 discovery.” *In re Eurasian*

19  *Nat'l Res. Corp., LTD.*, No 18-MC-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30,

20  2018).  Further, this Court has held that discovery pursuant to Section 1782 for use in German

21  patent proceedings is not barred by any German discovery restrictions. *See, e.g., In re Google*

22  *Inc.*, 2014 WL 7146994, at *3 (granting application under § 1782 to take discovery for use in

23  German patent proceeding where the applicant averred that the German courts “can be expected

24  to be receptive to the information obtained by this request” and holding that there is “nothing to

25  suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions”); *In*

26  *re Apple Inc.*, 2012 WL 1570043, at *2 (granting application because opposition did “not [meet]

27  its burden of demonstrating that the German courts would be unreceptive to U.S. Judicial

28  assistance or that [the applicant's] request is an attempt to circumvent German proof-gathering

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1   restrictions.").[7] To the contrary, as noted above, the United States courts have routinely granted

2   applications under Section 1782 for evidence to be used in the German courts. *See, e.g., Heraeus*

3   *Kulzer*, 633 F.3d at 597-99; *Cryolife, Inc.*, 2009 WL 88348, at *l, *3-5; *In re Minatec*, 2008 WL

4   3884374, at*1.

5        In light of the Declaration of Mr. Prinz zu Waldeck, the supporting case law, and the

6   absence of any compelling proof that the German courts would reject the discovery that

7   Applicants seek from Nvidia, this factor weighs heavily in Applicants' favor. *Heraeus Kulzer*,

8   633 F.3d at 597 ("Once a section 1782 applicant demonstrates a need for extensive discovery for

9   aid in a foreign lawsuit, the burden shifts to the opposing litigant to demonstrate, by more than

10  angry rhetoric, that allowing the discovery sought (or a truncated version of it) would disserve the

11  statutory objectives."); *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) ("Absent

12  authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of

13  section 1782 ... a district court should not refrain from granting the assistance afforded under the

14  Act based simply on allegations to that effect.") (citations and quotations omitted). Accordingly,

15  the third *Intel* discretionary factor also weighs in favor of granting Applicants' *ex parte*

16  application.

17          4.      **Fourth *Intel* Factor: Applicants' Discovery Is Narrowly Tailored To
                    Avoid Undue Burden**
18

19       The *Intel* Court noted that "unduly intrusive or burdensome requests may be rejected or

20  trimmed." 542 U.S. at 265. Here, Applicants' proposed discovery is narrowly tailored to target

21  only the documents and information necessary to assess and respond to Nvidia's and Nintendo's

22  claims that: (1) the Riva TNT chip is prior art to, and invalidates, the EP'531 Patent; and (2) the

23  Nintendo Switch cannot infringe the EP '385 Patent, the EP '910 Patent, and the EP '339 Patent

24

25  _____

    [7] *See also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097, 1101 (2d Cir. 1995)
26  (permitting discovery under Section 1782 and observing that court "can simply refuse to consider
    any evidence that [1782 applicant] gathers by what might be—under French procedures—an
27  unacceptable practice"); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis.
    2004) (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a district
28  court must conclude that the request would undermine a specific policy of a foreign country or
    the United States").

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3                                    - 13 -
EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

because various functions associated with the NVIDIA Tegra X1 chip have been disabled and are not allowed by the associated software.  Rather than requesting broad, ill-defined categories of documents and information, Applicant's document requests identify specific documents and materials that Nvidia should be able to identify, collect, and produce with relatively little effort.  Similarly, Applicants' proposed deposition notice identifies narrow, well-defined deposition topics.  Any burden imposed by this discovery is entirely justified under the circumstances.  Having relied on the RIVA TNT chip, as described in the two-page Product Overview, as prior art that purportedly invalidates the EP '531 Patent, Nvidia cannot rightly claim that it should not be required to produce the documents, materials, and information necessary to fully describe how the chip functions.  Similarly, the requested discovery poses no unfair burden upon Nvidia in view of the non-infringement arguments made by its customer, Nintendo, about the manner in which the NVIDIA Tegra X1 chip operates.  Thus, this factor, like the other discretionary *Intel* factors, favors granting this application.

## II.    CONCLUSION

The Applicants have satisfied the three statutory requirements of 28 U.S.C. § 1782.  The *Intel* factors also weigh in favor of granting this Application.  Applicants therefore respectfully request that this Court issue the proposed order attached as Exhibit 1, authorizing Applicants to serve Nvidia with subpoenas in substantially the same form as Exhibits 2 and 3.

Dated: May 15, 2019

HOPKINS & CARLEY
A Law Corporation

By: _____
Jason S. Angell
Christopher A. Hohn
Attorneys for Applicant
BROADCOM CORPORATION

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO

692\3257988.3

- 14 -

EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. SECTION 1782
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

EXHIBIT 1

1   Jason S. Angell, Bar No. 221607
    jangell@hopkinscarley.com
2   Christopher A. Hohn, Bar No. 271759
    chohn@hopkinscarley.com
3   HOPKINS & CARLEY
    A Law Corporation
4   The Letitia Building
    70 South First Street
5   San Jose, CA 95113-2406

6   *mailing address:*
    P.O. Box 1469
7   San Jose, CA 95109-1469
    Telephone:    (408) 286-9800
8   Facsimile:    (408) 998-4790

9   Attorneys for Applicants
    BROADCOM CORPORATION and AVAGO
10  TECHNOLOGIES INTERNATIONAL SALES
    PTE. LIMITED

11

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14  In re Ex Parte Application of          MISC. ACTION NO.
    BROADCOM CORPORATION, a
15  Delaware corporation, and AVAGO        **[PROPOSED] ORDER GRANTING**
    TECHNOLOGIES INTERNATIONAL             **LEAVE TO OBTAIN DISCOVERY FOR**
16  SALES PTE. LIMITED, a business entity  **USE IN FOREIGN PROCEEDINGS**
    formed under the laws of Singapore

17

18  Applicants,

19  for an Order Pursuant to 28 U.S.C. Section
    1782 Granting Leave to Obtain Discovery
20  for Use in Foreign Proceedings,

21

22

23

24

25

26

27

28

692\3247833.1

[PROPOSED] ORDER GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A
FOREIGN PROCEEDINGS

1    The *Ex Parte* Application of Broadcom Corporation and Avago Technologies

2  International Sales Pte. Limited (collectively "Applicants") for an Order Pursuant to 28 U.S.C.

3  Section 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings

4  ("Application"), which seeks documents and testimony from Nvidia Corporation ("Nvidia") in

5  connection with patent litigation pending in Germany, came before this court on May 14, 2019.

6    Having reviewed and considered all moving papers, exhibits, and any oral argument, and

7  good cause appearing,

8    **IT IS HEREBY ORDERED** that:

9    1.    The *Ex Parte* Application is **GRANTED**;

10    2.    Applicants are hereby granted leave to issue a subpoena for documents in

11  substantially the form attached as Exhibit 2 to the Application;

12    3.    Applicants are hereby granted leave to issue a subpoena for testimony in

13  substantially the form attached as Exhibit 3 to the Application; and

14    4.    Copies of this Application, its supporting documents, and this Order shall be

15  mailed to the following: Nvidia Corporation, 2788 San Tomas Expressway, Santa Clara, CA

16  95051.

17    **IT IS SO ORDERED.**

18

19  Dated: _____, 2019

20  _____
U.S. DISTRICT COURT JUDGE

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO

692\3247833.1

[PROPOSED] ORDER GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A
FOREIGN PROCEEDINGS

# EXHIBIT 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BROADCOM CORPORATION; AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED | ) ) ) | |
| *Plaintiff* | ) | Civil Action No. |
| v. | ) ) | |
| N/A | ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Nvidia Corporation, 2788 San Tomas Expressway, Santa Clara, CA 95051

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See Attachment A

| Place: Hopkins & Carley, 70 S. First Street, San Jose, CA 95113 | Date and Time: |
|---|---|
| | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Broadcom Corporation and Avago Techs. Int'l Sales Pte. Limited _____ , who issues or requests this subpoena, are:

Jason S. Angell of Hopkins & Carley, ALC; 70 South First Street, San Jose, CA 95113-2406; (408) 286-9800

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                          *Server's signature*

                                 _____
                                          *Printed name and title*

                                 _____
                                          *Server's address*

Additional information regarding attempted service, etc.:



AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).


American LegalNet, Inc.
www.FormsWorkFlow.com

1

2

3                    **ATTACHMENT A**

            **REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

4       A copy of each technical reference manual for the RIVA TNT™ graphics accelerator

5 chip.

6 **REQUEST FOR PRODUCTION NO. 2:**

7       A copy of each Programmer's Guide or other manual provided to software developers for

8 the RIVA TNT™ graphics accelerator chip.

9 **REQUEST FOR PRODUCTION NO. 3:**

10       A copy of each diagram or schematic of the architecture of the RIVA TNT™ graphics

11 accelerator chip.

12 **REQUEST FOR PRODUCTION NO. 4:**

13       A copy of documents sufficient to show the manner in which the RIVA TNT™ graphics

14 accelerator chip performs texture processing.

15 **REQUEST FOR PRODUCTION NO. 5:**

16       A copy of the source code for the Mesa 3D OpenGL drivers for the RIVA TNT™

17 graphics accelerator chip.

18 **REQUEST FOR PRODUCTION NO. 6:**

19       A copy of the source code for the OpenGL ICD drivers for the RIVA TNT™ graphics

20 accelerator chip.

21 **REQUEST FOR PRODUCTION NO. 7:**

22       A copy of the source code for the DirectX 6.0 D3D drivers for the RIVA TNT™ graphics

23 accelerator chip.

24 **REQUEST FOR PRODUCTION NO. 8:**

25       A copy of the source code for the Open GL drivers for the RIVA TNT™ graphics

26 accelerator chip.

27 / / /

28 / / /

**REQUEST FOR PRODUCTION NO. 9:**

A copy of the register transfer level (RTL) code and circuit schematics for the texture modules for the RIVA TNT™ graphics accelerator chip.

**REQUEST FOR PRODUCTION NO. 10:**

A copy of each document that was publicly available before May 7, 1999 that describes the Riva TNT™.

**REQUEST FOR PRODUCTION NO. 11:**

A copy of each document that was publicly available before May 7, 1999 that describes OpenGL 1.2.

**REQUEST FOR PRODUCTION NO. 12:**

A copy of each document that was publicly available before May 7, 1999 that describes DirectX 6.0.

**REQUEST FOR PRODUCTION NO. 13:**

A copy of each document that refers or relates to the RIVA TNT™ product that NVIDIA Corp., or anyone acting on its behalf, provided to (or caused to be provided to) Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, employees of Bardehle Pagenberg, Volkswagen AG, Audi AG, any other Volkswagen entity, Harman Becker Automotive Systems GmbH, any other Harman entity, employees of Kather Augenstein, or any other person or entity representing a Nintendo, Volkswagen, Audi, or Harman entity, from October 18, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

A copy of each document that refers or relates to OpenGL that NVIDIA Corp., or anyone acting on its behalf, provided to (or caused to be provided to) Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, employees of Bardehle Pagenberg, Volkswagen AG, Audi AG, any other Volkswagen entity, Harman Becker Automotive Systems GmbH, any other Harman entity, employees of Kather Augenstein, or any other person or entity representing a Nintendo, Volkswagen, Audi, or Harman entity, from October 18, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 15:**

A copy of each document that refers or relates to DirectX 6.0, DirectX 7.0, or DirectX 8.0 that NVIDIA Corp., or anyone acting on its behalf, provided to (or caused to be provided to) Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, employees of Bardehle Pagenberg, Volkswagen AG, Audi AG, any other Volkswagen entity, Harman Becker Automotive Systems GmbH, any other Harman entity, employees of Kather Augenstein, or any other person or entity representing a Nintendo, Volkswagen, Audi, or Harman entity, from October 18, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 16:**

A copy of all communications with Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, employees of Bardehle Pagenberg, or any other person or entity representing a Nintendo entity, regarding to any litigation with Broadcom Corporation, Avago Technologies General IP (Singapore) Pte. Ltd., Avago Technologies International Sales Pte. Limited, or any other Broadcom or Avago entity, from October 18, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

A copy of all motions, declarations, exhibits, and other papers filed, lodged, or otherwise presented to the Court in connection with motions for summary judgment of infringement and motions for summary judgment of non-infringement in the actions entitled *3DFX Interactive Inc. v. Nvidia Corp.*, United States District Court for the Northern District of California, Case No. 3:98-cv-03627-MHP and *3DFX Interactive Inc. v. Nvidia Corp.*, United States District Court for the Northern District of California, Case No. 3:99-cv-02460-MHP.

**REQUEST FOR PRODUCTION NO. 18:**

A copy of all materials Nvidia Corporation produced in the litigation entitled *3DFX Interactive Inc. v. Nvidia Corp.*, United States District Court for the Northern District of California, Case No. 3:98-cv-03627-MHP and *3DFX Interactive Inc. v. Nvidia Corp.*, United States District Court for the Northern District of California, Case No. 3:99-cv-02460-MHP, including a copy of the deposition transcripts and exhibits for all Nvidia Corporation witnesses.

///

**REQUEST FOR PRODUCTION NO. 19:**

For each NVIDIA Tegra® X1 product (or product based on the NVIDIA Tegra® X1 that are customized or otherwise modified) supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, or any supplier of any Nintendo entity, a copy of the corresponding Technical Reference Manual; all block diagrams of the product; all technical documentation for the PCIe Controller and the AFI, including the documentation of the AFI arbitration logic, implemented on the product; all documentation describing the enabling or disabling of the SRC_OVER-function on the product; all documentation regarding the enabling, disabling or control of the blending modes of the display controller on the product; and all configuration files for configuring the product, as provided to any of the aforementioned entities.

**REQUEST FOR PRODUCTION NO. 20:**

A copy of documents sufficient to show what features and functionalities are enabled and disabled in any NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) that are supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, or any supplier of any Nintendo entity.

**REQUEST FOR PRODUCTION NO. 21:**

A copy of documents sufficient to describe any modifications to or customization of any NVIDIA Tegra® X1 products, corresponding drivers, and other system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, or any supplier of any Nintendo entity.

**REQUEST FOR PRODUCTION NO. 22:**

A copy of any documentation provided to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, or any supplier of any Nintendo entity, regarding the functionality or programmability of any NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding drivers and other system software.

/ / /

/ / /

1  **REQUEST FOR PRODUCTION NO. 23:**

2      A copy of the source code of all drivers (including the Windows NVIDIA Tegra® X1

3  driver supplied to Nintendo for use in the Nintendo Switch SDK) and other system software for

4  the Tegra® X1 products provided to Nintendo of Europe GmbH, Nintendo of America Inc., any

5  other Nintendo entity, or any supplier of any Nintendo entity, for any NVIDIA Tegra® X1

6  products.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BROADCOM CORPORATION; AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED | ) ) ) | |
| *Plaintiff* | ) | Civil Action No. |
| v. | ) ) | |
| N/A | ) | |
| *Defendant* | | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Nvidia Corporation, 2788 San Tomas Expressway, Santa Clara, CA 95051
*(Name of person to whom this subpoena is directed)*

☒ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A

| Place: Hopkins & Carley, 70 S. First Street, San Jose, CA 95113 | Date and Time: |
|---|---|

The deposition will be recorded by this method:  Stenographer; videographer

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*
                                                    OR

_____        _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Broadcom Corporation and Avago Techs. Int'l Sales Pte. Limited_____, who issues or requests this subpoena, are:
Jason S. Angell of Hopkins & Carley, ALC; 70 South First Street, San Jose, CA 95113-2406; (408) 286-9800
#### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                    *Server's signature*

                                                  _____
                                                    *Printed name and title*

                                                  _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).


American LegalNet, Inc.
www.FormsWorkFlow.com

**ATTACHMENT A**

**DEPOSITION TOPICS**

**TOPIC NO. 1:**

    The documents, code, drivers, and other materials requested in Broadcom Corporation's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, which was served on NVIDIA Corp. on or about _____.

**TOPIC NO. 2:**

    How the RIVA TNT™ graphics accelerator chip performs texture processing.

**TOPIC NO. 3:**

    How the RIVA TNT™ graphics accelerator chip uses and interacts with Open GL, and the aspects of OpenGL involved in texture processing.

**TOPIC NO. 4:**

    How the RIVA TNT™ graphics accelerator chip uses and interacts with DirectX 6.0, and the aspects of DirectX 6.0 involved in texture processing.

**TOPIC NO. 5:**

    NVIDIA Corp.'s communications with Nintendo of Europe GmbH, Nintendo of America Inc., and any other Nintendo entity, regarding the RIVA TNT™ product, OpenGL, DirectX 6.0, DirectX 7.0, and DirectX 8.0, from March 15, 2018 to the present.

**TOPIC NO. 6:**

    NVIDIA Corp.'s communications with Nintendo of Europe GmbH, Nintendo of America Inc., and any other Nintendo entity, regarding any litigation with Broadcom Corporation, or any other Broadcom or Avago entity, from March 15, 2018 to the present.

**TOPIC NO. 7:**

    The manner in which the NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities perform video processing, and specifically, texture processing.

**TOPIC NO. 8:**

Any customization of the NVIDIA Tegra® X1 products (or customized or modified versions of the NVIDIA Tegra® X1) supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities, including but not limited to any features or functionalities that were enabled or disabled in these products.

**TOPIC NO. 9:**

The structure, function, and operation of the drivers and other system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entity, or any suppliers of any Nintendo entity, for any NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified), including but not limited to the identity of those drivers and their contributions to texture processing.

**TOPIC NO. 10:**

Whether the SRC_OVER-function is available to blend several graphic layers or windows in NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding graphics driver and system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities.

**TOPIC NO. 11:**

The manner in which the NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding graphics driver and system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities perform the blending of previously generated graphic data with video data or layers.

**TOPIC NO. 12:**

The enabling, disabling or control of the blending modes of the Display Controller on the NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding graphics driver and system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any

suppliers of any Nintendo entities.

**TOPIC NO. 13:**

The configuration and features of the PCIe controller and the AFI implemented in NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding graphics driver and system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities.

**TOPIC NO. 14:**

The configuration and features of the display controller, including but not limited to the configuration of the Display Controller Front End, implemented in NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) and corresponding graphics driver and system software supplied to Nintendo of Europe GmbH, Nintendo of America Inc., any other Nintendo entities, and any suppliers of any Nintendo entities.